# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO HARRIS BANK N.A., a national banking association,<br><br>Plaintiff,<br><br>v.<br><br>BKSG TRANSPORTATION LLC, a California limited liability company, NARINDER BAINS, an individual resident and citizen of California, and KARNVIR SINGH, an individual resident and citizen of California,<br><br>Defendants. | Case No. 1:17-cv-00586-LJO-BAM<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. Nos. 25, 28) |

On December 15, 2017, Plaintiff BMO Harris Bank N.A. ("Plaintiff") filed a motion for default judgment against Defendants BKSG Transportation LLC ("BKSG"), Narinder Bains ("Bains") and Karnvir Singh ("Singh"), (collectively "Defendants"). (Doc. No. 25.) Plaintiff re-noticed the motion hearing for February 16, 2018, and requested a continuance to March 16, 2018, which was granted. (Doc. Nos. 28, 30, 31.) No opposition was filed despite defendants being served with a copy of the motion for default judgment. (See Doc. No. 26.)

The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for March 16, 2018. Having considered the

moving papers and the Court's file, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED.[1]

**I.     BACKGROUND**

Plaintiff is a national banking association with its main office in Chicago, Illinois. Defendant BKSG is a limited liability company engaged in the business of commercial trucking and transportation. The sole member of BKSG is Defendant Singh.

On June 14, 2012, non-party General Electric Capital Corporation and Singh, a California citizen, entered into a Loan and Security Agreement No. Loan and Security Agreement No. 5924099-001 ("First Agreement"), whereby GECC agreed to finance Singh's purchase of equipment for use in Defendant Singh's business (the "First Loan Vehicles"), and Singh agreed to pay GECC $82,168.40. (Doc. No. 1, Compl. at ¶ 15 and Ex. A.)

On or about February 26, 2013, GECC and Singh entered into Loan and Security Agreement No. 776942-001 ("Second Agreement"), whereby GECC agreed to finance Defendant Singh's purchase of equipment for use in Singh's business ("Second Loan Vehicles"), and Singh agreed to pay GECC $167,734.80, including interest. (Compl. at ¶ 16 and Ex. B.)

On February 26, 2013, GECC and Singh entered into Loan and Security Agreement No. 7757942-002 ("Third Agreement"), whereby GECC agreed to finance Singh's purchase of equipment for use in Defendant Singh's business ("Third Loan Vehicles"), and Singh agreed to pay GECC $171,111.00, including interest. (Id. at ¶ 17 and Ex. C.)

On March 14, 2013, GECC and Bains entered into Loan and Security Agreement No. 7759707-001 ("Fourth Agreement"), whereby GECC agreed to finance Bains' purchase of the equipment for use in Bains' business ("Fourth Loan Vehicles"), and Bains agreed to pay GECC $163,815.00, including interest. (Id. at ¶ 18 and Ex. D.)

On May 17, 2013, GECC and Bains entered into Loan and Security Agreement No. 7767131-001 ("Fifth Agreement"), whereby GECC agreed to finance Bains' purchase of

---

1. The Court has not been notified that any party has filed bankruptcy. No notice of filing of bankruptcy has been filed with this Court. See Local Rule 159 ("If the filing party has not filed the required Notice and another party learns of the bankruptcy filing, that party must file the Notice within seven (7) days of learning of the bankruptcy filing.")

equipment for use in Bains' business ("Fifth Loan Vehicles"), and Bains agreed to pay GECC $161,819.40, including interest. (Id. at ¶ 19 and Ex. E.)

On June 5, 2013, GECC and Bains entered into Loan and Security Agreement No. 7768918-001 ("Sixth Agreement"), whereby GECC agreed to finance Bains' purchase of equipment for use in Bains' business ("Sixth Loan Vehicles"), and Bains agreed to pay GECC $162,394.20, including interest. (Id. at ¶ 20 and Ex. F.)

On August 6, 2013, GECC and BKSG entered into Loan and Security Agreement No. 7775623-001 ("Seventh Agreement"), whereby GECC agreed to finance BKSG's purchase of equipment for use in BKSG's business ("Seventh Loan Vehicles"), and BKSG agreed to pay GECC $160,213.68, including interest. (Id. at ¶ 21 and Ex. G.)

On August 20, 2013, GECC and BKSG entered into Loan and Security Agreement No. 7775623-002 ("Eighth Agreement"), whereby GECC agreed to finance Defendant BKSG's purchase of equipment for use in BKSG's business ("Eighth Loan Vehicles"), and BKSG agreed to pay GECC $159,852.66, including interest. (Id. at ¶ 22 and Ex. H.)

On August 29, 2013, GECC and BKSG entered into Loan and Security Agreement No. 7778087-002 ("Ninth Agreement"), whereby GECC agreed to finance BKSG's purchase of the equipment described therein for use in BKSG's business ("Ninth Loan Vehicles"), and BKSG agreed to pay GECC $185,052.20, including interest. (Id. at ¶ 23 and Ex. I.)

On or about September 25, 2013, GECC and BKSG entered into Loan and Security Agreement No. 7778087-003 ("Tenth Agreement"), whereby GECC agreed to finance BKSG's purchase of the equipment described therein for use in BKSG's business ("Tenth Loan Vehicles"), and BKSG agreed to pay GECC $165,501.00, including interest. (Id. at ¶ 24 and Ex. J.)

On January 28, 2014, non-party GE Capital Commercial Inc. ("GE Commercial," and together with GECC, "GE Capital") and Singh entered into Loan and Security Agreement No. 7792211-001 ("Eleventh Agreement"), whereby GE Commercial agreed to finance Singh's purchase of the equipment described therein for use in Singh's business ("Eleventh Loan Vehicles"), and Singh agreed to pay GE Commercial $319,161.60, including interest. (Id. at ¶ 25 and Ex. K.)

On January 31, 2014, GECC and Singh entered into Loan and Security Agreement No. 7792527-001 ("Twelfth Agreement"), whereby GECC agreed to finance Singh's purchase of the equipment described therein for use in Singh's business ("Twelfth Loan Vehicles"), and Singh agreed to pay GECC $171,191.40, including interest. (Id. at ¶ 26 and Ex. L.)

On February 27, 2014, GECC and Singh entered into Loan and Security Agreement No. 7792527-002 ("Thirteenth Agreement"), whereby GECC agreed to finance Singh's purchase of the equipment described therein for use in Singh's business ("Thirteenth Loan Vehicles"), and Singh agreed to pay GECC $171,300.60, including interest. (Id. at ¶ 27 and Ex. M.)

On April 28, 2014, GECC and Singh entered into Loan and Security Agreement No. 7801807-001 ("Fourteenth Agreement"), whereby GECC agreed to finance Singh's purchase of the equipment described therein for use in Singh's business ("Fourteenth Loan Vehicles"), and Singh agreed to pay GECC $85,903.20, including interest. (Id. at ¶ 28 and Ex. N.)

On June 11, 2014, GECC and Singh entered into Loan and Security Agreement No. 7806845-001 ("Fifteenth Agreement"), whereby GECC agreed to finance Singh's purchase of the equipment described therein for use in Singh's business ("Fifteenth Loan Vehicles"), and Singh agreed to pay GECC $85,665.60, including interest. (Id. at ¶ 29 and Ex. O.)

On June 30, 2014, GECC and Singh entered into Loan and Security Agreement No. 7808826-001 ("Sixteenth Agreement"), whereby GECC agreed to finance Singh's purchase of the equipment described therein for use in Singh's business ("Sixteenth Loan Vehicles"), and Singh agreed to pay GECC $342,408.60, including interest. (Id. at ¶ 30 and Ex. P.)

On June 30, 2014, GE Commercial and BKSG entered into Loan and Security Agreement No. 7809016-001 ("Seventeenth Agreement"), whereby GE Commercial agreed to finance BKSG's purchase of the equipment described therein for use in BKSG's business ("Seventeenth Loan Vehicles"), and BKSG agreed to pay GE Commercial $158,071.20, including interest. (Id. at ¶ 31 and Ex. Q.)

On July 11, 2014, GE Commercial and BKSG entered into Loan and Security Agreement No. 7809016-002 ("Eighteenth Agreement"), whereby GE Commercial agreed to finance BKSG's purchase of the equipment described therein for use in BKSG's business (the "Eighteenth Loan

Vehicles"), and BKSG agreed to pay GE Commercial $158,414.40, including interest.[2] (Id. at ¶ 32 and Ex. R.)

In consideration for entering into the Agreements, Singh, Bains, and BKSG each granted GECC and GE Commercial, respectively, a first-priority security interest in the Vehicles. Prior to the filing of this lawsuit, Plaintiff released certain units of the Vehicles as described in the Agreements that were paid off and/or were the subject of an insurance claim. As of the filing of this lawsuit, the Vehicles consist of the following units:

| Agreement | Number | Year | Make | Model | Desc. | VIN |
|---|---|---|---|---|---|---|
| **First** | 5924099-001 | 2013 | Utility | Refrigerated Van | Trailer | 1UYVS2531DU577506 |
| **Second** | 7767942-001 | 2013 | Kenworth | T660-Series | Tractor | 1XKAD49X3DJ357757 |
| | | 2005 | Utility | Refrigerated Van | Trailer | 1UYVS25305U467127 |
| **Third** | 7757942-002 | 2014 | Kenworth | T660-Series | Tractor | 1XKAD49X6EJ389264 |
| **Fourth** | 7759709-001 | 2014 | Utility | Refrigerated Van | Trailer | 1UYVS2537EU786914 |
| | (4819108-001) | 2014 | Utility | Refrigerated Van | Trailer | 1UYVS2539EU786915 |
| **Fifth** | 7767131-001 (4819108-002) | 2014 | Kenworth | T660-Series | Tractor | 1XKAD49X2EJ398396 |
| **Sixth** | 7768918-001 (4819108-003) | 2014 | Kenworth | T660-Series | Tractor | 1XKAD49X2EJ398401 |
| **Seventh** | 7775623-001 | 2014 | Kenworth | T660-Series | Tractor | 1XKAD49X2EJ408327 |
| **Eighth** | 7775623-002 | 2014 | Kenworth | T660-Series | Tractor | 1XKADP9X9EJ409640 |
| **Ninth** | 7778087-002 | 2014 | Utility | Refrigerated Van | Trailer | 1UYVS2535EU950211 |
| **Tenth** | 7778087-003 | 2014 | Utility | Refrigerated Van | Trailer | 1UYVS2530EU950214 |
| | | 2014 | Utility | Refrigerated Van | Trailer | 1UYS25339EU950213 |
| **Eleventh** | 7792211-001 | 2014 | Kenworth | T660-Series | Tractor | 1XKAD49X5EJ413750 |
| **Twelfth** | 7792527-001 | 2015 | Utility | Refrigerated Van | Trailer | 1UYVS253EFU097014 |
| | | 2015 | Utility | Refrigerated Van | Trailer | 1UYVS253XFU097015 |
| **Thirteenth** | 7792527-002 | 2015 | Utility | Refrigerated Van | Trailer | 1UYVS2535FU097004 |
| **Fourteenth** | 7801807-001 | 2015 | Utility | Refrigerated Van | Trailer | 1UYVS2538FU203705 |
| **Fifteenth** | 7806845-001 | 2015 | Utility | Refrigerated Van | Trailer | 1UYVS253FU241009 |
| **Sixteenth** | 7808826-001 | 2015 | Utility | Refrigerated Van | Trailer | 1UYVS2537FU262101 |
| | | 2015 | Utility | Refrigerated Van | Trailer | 1UYVS2539FU262102 |
| | | 2015 | Utility | Refrigerated Van | Trailer | 1UYVS2530FU262103 |
| | | 2015 | Utility | Refrigerated Van | Trailer | 1UYVS2532FU262104 |
| **Seventeenth** | 7809016-001 | 2015 | Kenworth | T680 | Tractor | 1XKYDP9X7FJ442426 |
| **Eighteenth** | 7809016-002 | 2015 | Kenworth | T680 | Tractor | 1XKYDP9X2FJ442429 |

(Id. at ¶ 34.)

GECC and GE Commercial perfected their respective security interests in the Vehicles by

---

[2] The First Agreement through Eighteenth Agreement are collectively referred to as the "Agreements." The First Loan Vehicles through the Eighteenth Loan Vehicles are collectively referred to as the "Vehicles." (Id. at ¶ 33.)

recording their respective liens on the Certificates of Title for each of the vehicles that comprise the Vehicles. Plaintiff holds the original Certificates of Title. (Id. at ¶ 35 and Ex. S.)

To induce GE Capital to enter into the Agreements, BKSG guaranteed Singh's full and timely performance of all of his present and future liabilities to, among others, GECC, GE Commercial, and their respective successors and assigns (the "BKSG Guaranty"). (Id. at ¶ 36 and Ex. T.)

To induce GE Capital to enter into the Agreements, Singh guarantied BKSG's full and timely performance of all its present and future liabilities to, among others, GECC, GE Commercial, and their respective successors and assigns. In addition, Singh guarantied BKSG's full and timely performance of all its present and future liabilities specifically to Plaintiff (together the "Singh Guaranty"). (Id. at ¶ 37 and Ex. U.)

On August 22, 2016, all the Agreements were modified to reschedule the balance of each respective agreement. Accordingly, Plaintiff and Defendants entered into certain Modification Agreements which are specifically incorporated into the original Agreements. (Id. at ¶ 38.)

To further secure BKSG's payment and performance obligations to Plaintiff, on August 22, 2016, BKSG and Plaintiff entered into an Additional Collateral Security Agreement (the "BKSG Blanket Lien"). The BKSG Blanket Lien granted to Plaintiff a security interest in, among other things, all then owned or thereafter acquired "new and used equipment or inventory . . . all chattel paper, documents, general intangibles, instruments, accounts, and contract rights . . . and all cash and non-cash proceeds" ("Additional BKSG Collateral"). (Id. at ¶ 39 and Ex. V.)

To further secure Singh's payment and performance obligations to Plaintiff, on August 22, 2016, Singh and Plaintiff entered into an Additional Collateral Security Agreement (the "Singh Blanket Lien"). The Singh Blanket Lien granted to Plaintiff a security interest in, among other things, all then owned or thereafter acquired "new and used equipment or inventory . . . all chattel paper, documents, general intangibles, instruments, accounts, and contract rights . . . and all cash and non-cash proceeds" ("Additional Singh Collateral"). (Id. at ¶ 40 and Ex. W.)

In addition, on August 22, 2016, Singh and BKSG executed and delivered to Plaintiff a Cross Collateral/Cross Default Agreement, pursuant to which, among other things, Singh and

BKSG agreed that a default under one of the Agreements is a default under all of the Agreements, and the collateral securing the performance under one of the Agreements is pledged to secure the performance under all of the Agreements. (Id. at ¶ 41 and Ex. X.)

Effective October 1, 2015, and December 1, 2015, GE Capital transferred and assigned to Plaintiff all of its rights, titles, and interests in and to its accounts with Defendants, including without limitation, the Agreements, the guaranties, and GE Capital's security interest in the Vehicles. Plaintiff is GE Capital's successor-in-interest with respect to all rights, claims, and interests related to Defendants with respect to this action. (Id. at ¶ 42 and Ex. Y.)

With the Plaintiff's consent, Bains, as transferor, and Singh, as transferee, entered into certain Transfer and Assumption Agreements wherein Bains agreed to assign to Singh all his right, title, and interest in the Fourth Loan Vehicles, Fifth Loan Vehicles, and Sixth Loan Vehicles and Singh agreed to assume and perform all the obligations of Bains to the Plaintiff under the Fourth Agreement, Fifth Agreement, and Sixth Agreement (collectively "Bains Agreements"). Accordingly, Singh, as assignee of Bains, is obligated to pay and perform all obligations owed by Bains to the Plaintiff under the Bains Agreements. As set forth in the Transfer and Assumption Agreements, Bains agreed that, notwithstanding the sale and transfer referenced therein, Bains is not released from his obligations under the Bains Agreements, but is and shall continue to be firmly bound thereby (Id. at ¶ 43 and Exs. D-F.)

Defendants are in default under the Agreements and the guaranties for their failure to pay the amounts due. (Id. at ¶¶ 44-46.) Pursuant to the terms of the Agreements, the entire amounts due have been accelerated. As of the respective dates of default, the principal amount due and owing after acceleration totals not less than $1,403,236.32. (Id. at ¶ 47.) Under the Agreements, Defendants are obligated to pay interest on all unpaid amounts at the default interest rate of eighteen percent per annum or the maximum rate not prohibited by applicable law. (Id. at ¶ 48.) Calculated from the respective dates of default, the amount of accrued and unpaid interest due and owing under the Agreements is an amount not less than $59,880.71. (Id. at ¶ 49.) Under the Agreements, Defendants are obligated to pay late charges. As of the respective dates of default, late charges in the amount of $26,341.90 have accrued, which amount remains due and owing.

7

(Id. at ¶¶ 50-51.) Under the Agreements, upon default, Defendants are obligated to pay all expenses of retaking, holding, preparing for sale, and selling the Vehicles. As of the date damages were calculated, repossession fees in the amount of $800.00 have accrued, which amount remains due and owing. (Id. at ¶¶ 52-53.) Calculated as of February 28, 2017, the amount due and owing under the Agreements, not including attorneys' fees and expenses or costs of collection, is an amount not less than $1,490,294.54. (Id. at ¶ 55.)

Under the guaranties, Singh is obligated to pay Plaintiff all amounts to due to Plaintiff by BKSG under the Agreements, and BKSG is obligated to pay Plaintiff all amounts due to Plaintiff by Singh under the Agreements. (Id. at ¶ 56.)

By letters dated February 28, 2017, Plaintiff notified Defendants of their respective defaults under the Agreements and guaranties. Plaintiff demanded that Defendants pay the amount due and surrender the Vehicles. (Id. at ¶ 57 and Ex. Z.) Despite the demand, Defendants have failed to pay the amount due and owing and have failed or refused to surrender possession of the Vehicles to Plaintiff. (Id. at ¶¶ 58-59.)

Prior to the filing of this lawsuit, Plaintiff recovered certain Vehicles. As of April 19, 2017, the following Vehicles remain in Defendants' possession or control ("Remaining Vehicles"):

| Year | Make | Model | Desc. | VI |
|------|------|-------|-------|-----|
| 2013 | Utility | Refrigerated Van | Trailer | 1UYVS2531DU5775 |
| 2014 | Utility | Refrigerated Van | Trailer | 1UYVS2537EU7869 |
| 2014 | Kenworth | T660-Series | Tractor | 1XKAD49X2EJ398 |
| 2014 | Kenworth | T660-Series | Tractor | 1XKAD49X2EJ398 |
| 2015 | Utility | Refrigerated Van | Trailer | 1UYVS2535FU0970 |
| 2015 | Utility | Refrigerated Van | Trailer | 1UYVS2537FU2621 |
| 2015 | Kenworth | T680 | Tractor | 1XKYDP9X7FJ442 |

(Id. at ¶ 61.)

Plaintiff filed the underlying action on April 27, 2017, asserting claims for injunctive relief, specific performance, claim and delivery, breach of contract, and foreclosure as to additional collateral against BKSG and Singh. Plaintiff personally served Defendant Narinder Bains by personal service on August 24, 2017. (Doc. No. 16.) Plaintiff served Defendant Karnvir Singh by substituted service on August 29, 2017. BKSG Transportation LLC also was served through its

member Karnvir Singh on August 29, 2017.[3] (Doc. No. 15.) Defendants did not respond to the complaint, and on November 30, 2017, Plaintiff filed a request for entry of default. (Doc. No. 21.) On the same day, the Clerk of the Court entered default against Defendants BKSG Transportation, Narinder Bains and Karnvir Singh. (Doc. No. 23.) Thereafter, on December 15, 2017, Plaintiff filed a motion for default judgment. (Doc. No. 25.) As the motion was deficiently noticed, Plaintiff re-noticed the motion for default judgment on January 3, 2018. (Doc. Nos. 27, 28.) Plaintiff requests default judgment in an amount of $1,604,132.05 against BKSG and Singh, jointly and severally, plus post-judgment interest which may accrue as well as all reasonable attorney's fees and costs incurred by Plaintiff in prosecuting this action. Plaintiff requests default judgment in an amount of $250,233.46 against Bains, plus post-judgment interest which may accrue as well as all reasonable attorney's fees and costs incurred by Plaintiff in prosecuting this action. (Doc. No. 25 at p. 5.) Plaintiff also seeks $5,144.50 in attorneys' fees and expenses. (Id. at p. 6.)

## II. LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986);

---

[3] Plaintiff's request for entry of default states that Defendant BKSG was served through its member, Narinder Bains. (Doc. No. 21.) Although Plaintiff's complaint alleges that BKSG's sole member is Karnvir Singh (Compl. at ¶ 2.), exhibits attached to the complaint alternately suggest that Narinder Bains is the sole member, manager and president of BKSG and that Karnvir Singh is the president of BKSG. (See, e.g., Doc. 1-1, Ex. E at 71-72 (Bains); Ex. G at 87 (Singh), 90 (Bains)).

PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002).

**III. DISCUSSION**

**A. Service of Process**

Plaintiff is suing two individuals in this action, Karnvir Singh and Narinder Bains. Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the United States. Pursuant to Rule 4(e)(2), an individual may be served by delivering a copy of the summons and of the complaint to the individual personally or by leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e)(2)(A), (B). According to the proofs of service on file, Defendant Narinder Bains was personally served and Defendant Karnvir Singh was served by leaving a copy of the summons and complaint at his dwelling or usual place of abode with his wife. (Doc. Nos. 15, 16.)

Plaintiff also is suing a limited liability company in this action, BKSG. As noted, it is unclear whether Defendant Narinder Bains is the sole member, manager and president of BKSG or if Defendant Singh is the sole member and president of BKSG. Pursuant to Rule 4(h), a domestic corporation, or a partnership or other unincorporated association that is subject to suit under a common name, may be served by following state law for service of a summons on an individual or by delivering a copy of the summons and complaint to an officer or agent and by a mailing a copy of each to the defendant. Fed. R. Civ. P. 4(h)(1). Regardless of whether Defendant Singh or Defendant Bains is the sole member of BKSG, the Court finds that service was properly effectuated. Plaintiff personally served Defendant Bains. Plaintiff also served Defendant Singh through substituted service. There is no indication in the record that either form of service was improper for effective service on BKSG. See Golden W. Veg, Inc. v. Bartley, No. 16-CV-03718-LHK, 2017 WL 386254, at *4 (N.D. Cal. Jan. 27, 2017) (finding service proper where plaintiff effected service of process upon sole proprietorship by serving the summons and complaint on its sole proprietor and agent of service by substituted service on the proprietor's wife).

For the above reasons, the Court finds that Plaintiff properly served Defendants Singh, Bains and BKSG.

### B. The <u>Eitel</u> Factors Weigh in Favor of Default Judgment

As discussed below, the Court finds that the <u>Eitel</u> factors weigh in favor of granting default judgment.

#### 1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. See <u>PepsiCo, Inc.</u>, 238 F.Supp.2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. <u>Id.</u>; <u>Moroccanoil, Inc. v. Allstate Beauty Prods.</u>, 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted, and this factor weighs in favor of default judgment.

#### 2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third <u>Eitel</u> factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." <u>DIRECTV, Inc. v. Hoa Huynh</u>, 503 F.3d 847, 854 (9th Cir. 2007). Plaintiff's complaint alleges breach of loan and security agreements and breach of guaranties. However, neither Plaintiff's application for default judgment nor its complaint provide the relevant legal standard or analysis of these claims. Despite this deficiency, the Court will evaluate the merits and sufficiency of the complaint.

Certain of the loan agreements at issue provide that they will be subject to the laws of the State of Texas. (Doc. No. 1-1, Exs. A-J, L-P at ¶ 7.6.) Certain other loan agreements at issue provide that they will be subject to the laws of the State of Utah. (Doc. No. 1-1, Ex. K, Q-R at ¶ 7.6.) In determining the enforceability of a choice-of-law provision in a diversity action, such as this one, a federal court applies the choice of law rules of the forum state, in this case California. <u>Hatfield v. Halifax PLC</u>, 564 F.3d 1177, 1182 (9th Cir. 2009). In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties or the transaction *or any other reasonable basis exists for the parties' choice of law.*' " <u>1–800–Got Junk? LLC v. Super. Ct.</u>, 189 Cal.App.4th 500, 513–14 (2010) (quoting <u>Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.</u>, 134 Cal.App.4th 1302,

1308 (2005) (emphasis in original). There is a strong policy in favor of enforcing choice of law provisions. 1–800–Got Junk? LLC, 189 Cal.App.4th at 513.

Here, the parties have agreed that the laws of Texas apply to claims arising out of certain loan agreements and that the laws of Utah apply to claims arising out of other loan agreements. It is not necessary to decide whether California or Texas's substantive law governs one set of agreements or whether California or Utah's substantive law governs another set agreements, because the Court is aware of no relevant differences between the states' laws governing breach of contract claims. See Petro-Diamond Inc., v. SCB & Assocs., LLC, No. SACV 12-01893-CJC(ANx), 2013 WL 12138724, at *3 n. 4 (C.D. Cal. Sept. 18, 2013) ("The Court need not decide whether California's or Texas's substantive law governs, however, because it is aware of no relevant differences between the states' laws governing breach of contract and civil conspiracy.");Bmo Harris Bank N.A. v. Singh, No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *6 (E.D. Cal. Oct. 4, 2016) (finding that the elements for a breach of contract are nearly identical under California and Utah law); see also Paramount Pictures Corp. v. Johnson Broad. Inc., No. CIV.A.H 04 03488, 2006 WL 367874, at *5 n. 6 (S.D. Tex. Feb. 15, 2006) ("The Court need not decide whether California's or Texas's substantive law applies, however, since the law governing breach of contract claims is the same for both states.").

In order to establish a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff. Id. at *5 (citing Reichert v. Gen. Ins. Co. of Am., 68 Cal.2d 822, 69 Cal.Rptr. 321, 442 P.2d 377, 381 (Cal. 1968), Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App. 2005)), and Campbell, Maack & Sessions v. Debry, 2001 UT App 397, ¶ 21, 38 P.3d 984, 991 (2001).

The Court finds that Plaintiff's complaint sufficiently states claims for breach of contract, which weighs in favor of default judgment.

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F Supp.2d at 1176;

see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, Plaintiff seeks a total judgment of $1,854,365.51, exclusive of attorneys' fees and costs. (Doc. No. 25.) The Court finds that although the amount at stake is significant, it is proportional to the harm caused by Defendants' failure to repay the loan amounts and, therefore, this factor does not weigh against entry of default judgment.

4. The Possibility of a Dispute Concerning Material Facts

The facts of this case are straightforward, and Plaintiff has provided the Court with well-pled allegations and a declaration with exhibits in support. Here, the Court may assume the truth of well-pled facts in the complaint following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. Defendants' failure to file an answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. See, e.g., Elektra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor therefore weighs in favor of default judgment.

5. Whether the Default Was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that Defendants' default resulted from excusable neglect. PepsiCo, Inc., 238 F.Supp.2d at 1177. Courts have found that where defendants were "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001). Upon review of the record, the Court finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. According to the Court's docket, Plaintiff properly served Defendants in this action. (Doc. Nos. 15, 16.) Moreover, Plaintiff served Defendants with a copy of the request for entry of default and the motion for default judgment. (Doc. No. 21 at 5; Doc. No. 26.) Despite ample notice of this lawsuit and Plaintiff's intention to seek a default judgment, Defendants have not appeared to date. Thus, the record suggests that they have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this

factor weighs in favor of the entry of a default judgment.

      6. <u>The Strong Policy Favoring Decisions on the Merits</u>

  "Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. <u>PepsiCo, Inc.</u>, 238 F.Supp.2d at 1177; <u>see also</u> <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendants have not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

  Upon consideration of the <u>Eitel</u> factors, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendants. The Court therefore will recommend that Plaintiff's Motion for Default Judgment be granted.

**IV.** **Requested Relief**

 **A. Damages**

  The loan agreements at issue all provide that in the event of default, all indebtedness becomes immediately due and payable, and Plaintiff is entitled to take possession of and dispose of the equipment and to have the borrower pay all interest and expenses incurred, including reasonable attorneys' fees. (Doc. No. 1-1, Exs. A-J, L-P at ¶¶ 5.1-5.3; K, Q-R at ¶¶ 5.1-5.3.) Pursuant to the guaranties, BKSG and Singh guaranteed each other's obligations under the Agreements. (Doc. No. 25 at p. 3; Doc. No. 1-1, Exs. T, U.)

  As of the respective dates of default on the various agreements, Plaintiff declares that the principal amount due and owing after acceleration is as follows:

  a. First Agreement: $19,381.75;
  b. Second Agreement: $68,806.35;
  c. Third Agreement: $73,655.20;
  d. Fourth Agreement: $70,323.30;
  e. Fifth Agreement: $73,014.53
  f. Sixth Agreement: $75,344.76;
  g. Seventh Agreement: $84,535.28;
  h. Eighth Agreement: $84,347.09;
  i. Ninth Agreement: $41,693.14;
  j. Tenth Agreement: $84,760.48;
  k. Eleventh Agreement: $92,300.14;

l. Twelfth Agreement: $100,599.13;
                m. Thirteenth Agreement: $50,877.50;
                n. Fourteenth Agreement: $52,298.68;
                o. Fifteenth Agreement: $54,735.45;
                p. Sixteenth Agreement: $193,644.94;
                q. Seventeenth Agreement: $82,574.04; and
                r. Eighteenth Agreement: $100,344.56.

(Doc. 25-1, Affidavit in Support of Motion for Default Judgment at ¶ 37.)

Further, under the agreements, Defendants are obligated to pay interest on all unpaid amounts at the default interest rate of eighteen percent per annum or the maximum rate not prohibited by law. (Id. at ¶ 38.) Calculated from the dates of default, the total amount of accrued and unpaid interest due and owing is $173,753.83. (Id. at ¶ 39.) Defendants also are obligated to pay late charges totaling $26,341.90. (Id. at ¶¶ 40, 41.) Defendants also are obligated to pay repossession fees totaling $800.00. (Id. at ¶¶ 42, 43.)

Calculated as of October 6, 2017, the amount due and owing under the Agreements, not including attorneys' fees and expenses or costs of collection, is an amount not less than $1,604,132.05. (Id. at ¶ 45.) Under the Guaranties, without limitation, Singh is obligated to pay Plaintiff all amounts due to Plaintiff by BKSG under the Agreements, and BKSG is obligated to pay Plaintiff all amounts due to Plaintiff by Singh under the Agreements. (Id. at ¶ 47.)

Calculated as of October 6, 2017, the amount due and owing under the Bains Agreements, not including attorneys' fees and expenses or costs of collection, is an amount not less than $250,233.46. (Id. at ¶ 46.)

### B. Attorneys' Fees

Plaintiff seeks a total amount of $5,144.50 in attorneys' fees and costs incurred in enforcing the Agreements and Guaranties. California and Texas both enforce contractual provisions allowing the collection of reasonable attorneys' fees. Cal. Civ. Proc. Code § 1021; Gil v. Mansano, 121 Cal.App.4th 739, 742-43 (2004); Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (allowing prevailing party in a breach of contract action to collect attorneys' fees as a default rule); Intercontinental Grp. P'ship v. KB Home Lone Star L.P., 295 S.W.3d 650, 653 (Tex. 2009) (finding that parties may specifically contract for a broader or narrower attorney's fees provision than the default rule laid out by statute). Where a contract provides the "right to attorney fees, Utah courts

15

have allowed the party who successfully prosecuted or defended against a claim to recover the fees attributable to those claims on which the party was successful. Dejavue, Inc. v. U.S. Energy Corp., 1999 UT App 355, ¶ 20, 993 P.2d 222, 227. The Court therefore finds that Plaintiff is entitled to reasonable attorneys' fees.

To determine a reasonable attorneys' fee, or "lodestar," the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Court, in considering what constitutes a reasonable hourly rate, looks to the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 (1984). The "relevant community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013). The relevant community here is the Fresno Division of the Eastern District of California.

In the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour. See, e.g. Leprino Foods Co. v. JND Thomas Co., Inc., No. 1:16-cv-01181-LJO-SAB, 2017 WL 128502, at *13 (E.D. Cal. Jan. 12, 2017), report and recommendation adopted in part, No. 1:16-cv-01181-LJO-SAB, 2017 WL 432480 (E.D. Cal. Feb. 1, 2017) (finding $400.00 per hour a reasonable hourly rate for attorney with more than thirty years of experience); Sanchez v. Frito-Lay, Inc., No. 1:14-CV-00797 AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), report and recommendation adopted, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for attorney with twenty years of experience was $350 per hour in a wage and hour class action); Willis v. City of Fresno, No. 1:09-CV-01766-BAM, 2014 WL 3563310, at *12 (E.D. Cal. July 17, 2014) adhered to on reconsideration, No. 1:09-CV-01766-BAM, 2014 WL 4211087 (E.D. Cal. Aug. 26, 2014) (awarding attorneys with over twenty five years of experience $380.00 per hour). Generally, "$300 is the upper range for competent attorneys with approximately a decade of experience." Barkett v. Sentosa Props. LLC, No. 1:14–CV–01698–LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (O'Neill, J.) (citing Silvester v. Harris, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17 2014). For attorneys with "less than ten years

16

of experience ... the accepted range is between $175 and $300 per hour." <u>Silvester</u>, 2014 WL 7239371 at *4 (citing <u>Willis v. City of Fresno</u>, 1:09-cv-01766-BAM, 2014 WL 3563310 (E.D. Cal. July 17, 2014); <u>Gordillo v. Ford Motor Co.</u>, No. 1:11-cv-01786 MJS, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). Finally, "[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience." <u>Silvester</u>, 2014 WL 7239371, at *4 (citations omitted); <u>cf.</u> <u>Franco v. Ruiz Food Prods., Inc.</u>, No. 1:10–cv–02354–SKO, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012) (approving a rate of "$100 per hour" for "legal assistants).

Here, Plaintiff provides no information regarding rates per hour or hours expended. Despite the deficiency in Plaintiff's moving papers, the Court takes judicial notice of the State Bar of California website, which shows that Mr. Miles, the attorney of record in this action, was admitted to practice in California in 2010, and has approximately 8 years of experience in this state. He also is admitted to practice law in Kansas, Missouri and Tennessee. (Doc. No. 25-1, Ex. B, Affidavit in Support of Award of Attorneys' Fees at ¶ 1.) Given this information, the Court finds a rate of $300 per hour to be reasonable for the services of Mr. Miles. With this hourly rate in mind, the amount of $5,144.50 requested by Plaintiff equates with approximately 17 hours of work incurred prosecuting this action. The Court finds this amount reasonable, and will recommend that attorney fees be awarded in the amount of $5,144.50.

### V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (Doc. No. 25) be granted; and

2. Default judgment be entered in favor of Plaintiff and against Defendant Karnvir Singh and BKSG Transportation LLC, jointly and severally, in the amount of $ 1,604,132.05, plus post-judgment interest which may accrue, less any net proceeds received from the liquidation of any Remaining Vehicles or Additional Collateral recovered;

3. Default judgment be entered in favor of Plaintiff and against Defendant Narinder Bains in the amount of $250,233.46, plus post-judgment interest which may accrue, less any net proceeds received from liquidation of any Remaining Vehicles or additional collateral recovered;

4. Defendants, jointly and severally, shall pay to Plaintiff an amount of 5,114.50, which represents the reasonable attorneys' fees and costs incurred;

5. Plaintiff be awarded final possession of the Remaining Vehicles or Additional Collateral; and

6. Upon recovery of the Remaining Vehicles or Additional Collateral identified above, Plaintiff be authorized to liquidate such vehicles or collateral in accordance with the agreements and applicable law.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 10, 2018**          /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE